IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

GREG ALLEN WEBB                                                            PLAINTIFF

VS.                                   CIVIL ACTION NO. 2:09cv187-MTP

BEN FORD, ET AL.                                                  DEFENDANTS

## OPINION AND ORDER

THIS MATTER is before the Court on the Motion for Summary Judgment [27] filed by Defendants. Having reviewed the submissions of the parties and the applicable law, the Court finds that the Defendants' Motion for Summary Judgment [27] should be granted.

FACTUAL BACKGROUND

Plaintiff Greg Allen Webb, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983 on September 11, 2009. Through his complaint, and as clarified during his *Spears*[1] hearing, Plaintiff alleges claims against Defendants Ben Ford (in his official capacity only) and Jim Kinslow (in his individual and official capacities) for the denial and/or delay of adequate medical treatment in violation of the Fourteenth Amendment.[2]

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing took place on January 29, 2010. *See* Transcript, Ex. C to Motion [27-1], hereinafter cited as "Tr. at --."

[2] "The constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996); *see also Brown v. Attala County Sheriff's Dep't*, No. 1:08CV96-A-A, 2009 WL 1750333, at *3 (N.D. Miss. Jun. 19, 2009) (citing *Hare*, 74 F.3d at 648) (holding that the subjective deliberate indifference standard applies to both pre-trial detainees under the Fourteenth Amendment and convicted inmates under the Eighth Amendment).

Plaintiff also asserted claims against Angie Diehl. However, those claims have been dismissed. *See* Order [19].

1

Specifically, he claims he was denied adequate medical treatment for eye and shoulder/collar bone injuries he received prior to incarceration.  *See* Scheduling and Case Management Order [19].  The allegations in Plaintiff's complaint occurred while he was a pre-trial detainee at the Covington County Jail (the "Jail"), where he is presently housed.

Defendants filed their Motion for Summary Judgment [27] on July 1, 2010.  Plaintiff failed to respond to the Motion, despite an Order [29] from the Court directing him to do so.

## STANDARD FOR SUMMARY JUDGMENT

This Court may grant summary judgment only if, viewing the facts in a light most favorable to the Plaintiff, the Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.  *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995).  If the Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied.  *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985).  The existence of an issue of material fact is a question of law that this Court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues."  *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts.  "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts.  In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary

facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983. However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

**Denial of Adequate Medical Care**

Plaintiff alleges a claim against the Defendants for the denial and/or delay of adequate medical treatment in violation of the Fourteenth Amendment. Specifically, he claims he was denied adequate medical treatment for eye and shoulder/collar bone injuries he received prior to incarceration.

During his *Spears* hearing, Plaintiff testified that he was in a car wreck in February

2007,[3] approximately five months prior to his incarceration. As a result of the car wreck, Plaintiff suffered severe head trauma, broke his collar bone and got glass in his eye. Upon Plaintiff's arrest, he was no longer being treated for the injuries he suffered in the car accident; however, he stated he still experienced shoulder pain. Tr. at 7-12.

Plaintiff testified that approximately one month into his incarceration at the Jail, he filled out a medical request form seeking treatment for shoulder pain. Plaintiff was taken to Covington County Medical Center and was seen by a physician. Plaintiff testified that the physician prescribed him Motrin for pain, eye drops, and a sling, and recommended he go to a "bone clinic." Plaintiff stated that he received the Motrin, but never received the eye drops. Tr. at 10-12.

Plaintiff testified that he was taken to the doctor on several more occasions for the same problems. However, he claims he was never taken to the "bone clinic" to get his shoulder replaced. He also testified that he has asked to go back to the doctor, but "they" wouldn't take him. Tr. at 12-13.

Plaintiff testified that he sued Ben Ford, Covington County Sheriff, because he is the "overseer" and Plaintiff believes everything has to go through him. Because Sheriff Ford is "in charge," Plaintiff claims he should have ensured Plaintiff received adequate medical care. Plaintiff stated he has had no personal contact with Sheriff Ford about his medical problems. Tr. at 13.

Plaintiff testified that he sued Jim Kinslow, Chief Deputy for the Covington County

---

[3]Plaintiff testified that he was in a car wreck in February 2007, and was incarcerated in July 2007. However, according to the medical records and arrest form submitted by Defendants, he was in a car accident in February 2008, and was arrested in July 2008. *See* Exs. A and F to Motion [27]. Apparently, Plaintiff inadvertently stated the incorrect year.

4

Sheriff's Department, because he confiscated an arm sling given to Plaintiff by a doctor. Deputy Kinslow allegedly told Plaintiff he couldn't have the sling because he may hang himself with it. He also sued Deputy Kinslow because he wouldn't take him back to the doctor or the bone clinic; Deputy Kinslow allegedly decides which inmates get to see the doctor. Tr. at 14-17.

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 F. App'x 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The subjective deliberate indifference standard applies to both pre-trial detainees under the Fourteenth Amendment and convicted inmates under the Eighth Amendment. *Brown v. Attala County Sheriff's Dep't*, No. 1:08CV96-A-A, 2009 WL 1750333, at *3 (N.D. Miss. Jun. 19, 2009) (citing *Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir.1996)).

A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838. Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard

5

for any serious medical needs." *Davidson*, 91 F. App'x at 965 (quoting *Domino*, 239 F.3d at 756). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). The Plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

Even assuming Plaintiff's alleged shoulder/collar bone and eye injuries are serious medical needs, Plaintiff has failed to establish a genuine issue of material fact as to whether Defendants were deliberately indifferent to his situation. Regarding Plaintiff's alleged eye injury, the evidence reflects that Plaintiff presented to Dr. Andrea Bruce on August 17, 2009, complaining of headaches, "a bilateral tearing of eye with pruritus," and other ailments. Dr. Bruce prescribed Patanol ophthalmic eye drops. *See* Ex. F to Motion [27-6] at MEDS-FMA-000004. According to Plaintiff's prescription log, the prescription was filled the same day. *See* Ex. G to Motion [27-7]. This summary judgment evidence is unrefuted. Accordingly, not only has Plaintiff failed to establish that his eye drop prescription was not filled, he has failed to establish that the prescription was not filled due to Defendants' deliberate indifference.

Regarding Plaintiff's claim that Deputy Kinslow confiscated his sling, there is no evidence in the record that Plaintiff was actually provided or prescribed an arm sling by a

physician. Moreover, the unrefuted testimony of Deputy Kinslow reflects that he was never informed by a medical provider that Plaintiff was prescribed or required an arm sling, he never saw Plaintiff with an arm sling, and he never took an arm sling from Plaintiff. *See* Affidavit of Kinslow, Ex. E to Motion [27-5]. Even assuming that Deputy Kinslow did take his sling, Plaintiff has failed to demonstrate that he knew of and disregarded an excessive risk to his health or safety. *See Farmer*, 511 U.S. at 838. Accordingly, this claim is without merit.

Plaintiff's claim that Defendants failed to take him to a "bone clinic" to get his shoulder treated is also without merit. The record reflects that Plaintiff saw a medical provider on numerous occasions for various ailments, including shoulder pain. *See* Ex. F to Motion [27-6]. Plaintiff was given Ultram and other medication for pain. *Id.* Plaintiff presented to Jamie Shivers, Family Nurse Practitioner, on October 9, 2008, complaining of neck pain and a sore throat. Shivers noted that the knot on the left clavicle appeared larger than at his last visit. Shivers noted that Plaintiff may need to see an orthopedic doctor due to the increased swelling, and that he would try to contact an orthopedist after receiving the results of his x-ray. *See* Ex. F to Motion [27-6] at MEDS-FMA-000008. The x-ray taken of Plaintiff's left clavicle on October 9, 2008, reveals that there was no fracture, dislocation, or acute bony abnormality. *Id.* at MEDS-FMA-000011.

Plaintiff presented to Shivers several times after the October 9, 2008, x-ray, complaining of chronic shoulder pain and other ailments. On November 18, 2008, Shivers noted a small swollen area on Plaintiff's left clavicle, but noted it was unchanged since his last exam. On January 30, 2009, Shivers again noted a large knot on Plaintiff's left clavicle, but noted that it had not changed in appearance in the last three to four months. On July 28, 2009, Shivers noted that there was a little deformity on Plaintiff's left clavicle that occasionally caused him pain. *Id.*

at MEDS-FMA-000005-07. During these visits, Plaintiff was prescribed medication for pain, but there was no mention of a need for a referral to an orthopedist. *Id.*; Ex. G to Motion [27-7]. Thus, after the x-ray of Plaintiff's left clavicle on October 9, 2008, revealed that there was no fracture, dislocation, or acute bony abnormality, Shivers apparently changed his mind about the need for an orthopedist referral.

Based on the evidence before the Court, Plaintiff was never referred to or scheduled an appointment with an orthopedic specialist. Further, Deputy Kinslow's sworn affidavit reflects that he was never made aware that Plaintiff needed to see an orthopedic specialist, and that to his knowledge, Plaintiff was provided all necessary medical treatment during his incarceration at the Jail. *See* Affidavit of Kinslow, Ex. E to Motion [27-5]. Moreover, Plaintiff has no automatic constitutional right to an outside referral or specialist. *See Randle v. Mesrobian*, 165 F.3d 32, 2007 WL 551941, at *3 (7th Cir. 1998) ("Prisons are not required to keep specialists on staff, and inmates have no automatic right to consult with outside physicians."); *see also Green v. McKaskle*, 788 F.2d 1116, 1127 (5th Cir. 1986) (stating that the "mere claim that [prisoner] was not afforded a doctor who specialized in the treatment of paraplegia or a trained physical therapist does not, of itself, state a claim of deliberate indifference"). There is simply no evidence that Defendants "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Davidson*, 91 F. App'x at 965 (quoting *Domino*, 239 F.3d at 756). Plaintiff may disagree with the treatment he received and may disagree with the fact he was not taken to a specialist; however, this does not amount to deliberate indifference. *See Norton*, 122 F.3d at 292. Thus, Plaintiff has failed to meet the extremely high standard of

demonstrating deliberate indifference in violation of the Fourteenth Amendment.[4] *See Gobert*, 463 F.3d at 346.

Plaintiff has also failed to raise a genuine issue of material fact as to his deliberate indifference claims against Sheriff Ford and Deputy Kinslow in their official capacities. As set forth above, Plaintiff has failed to establish a constitutional violation. Even assuming he had, he has failed to show that a policy, custom or practice of Covington County was the "moving force" behind the alleged constitutional violation. *Monell*, 436 U.S. at 694.

## CONCLUSION

For the reasons stated above, the court finds that Defendants' Motion for Summary Judgment [27] should be granted. Accordingly,

IT IS, THEREFORE, ORDERED:

That Defendants' Motion for Summary Judgment [27] is GRANTED and that this action is dismissed with prejudice.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

---

[4] Because the Court finds that there has been no constitutional violation by Defendants, the Court does not reach Deputy Kinslow's qualified immunity argument. *See Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1993) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)); *see also Sappington v. Bartee,* 195 F.3d 234, 236 (5th Cir. 1999) (stating that if the court finds that the plaintiff's claims are not cognizable as constitutional claims, it need not reach the question whether the defendant is entitled to qualified immunity).

SO ORDERED this the 13th day of August, 2010.

                                                s/ Michael T. Parker
                                                United States Magistrate Judge